UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENCEY PURDLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-01044-GCS |
| | ) |
| MICAH GRIMES and BRYAN PERDUE | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 28). Defendants filed their Motion along with a Memorandum of Support on December 19, 2022. (Doc. 28, 29). Plaintiff timely filed his Response to Defendants' Motion for Summary Judgment on January 3, 2023. (Doc. 31). For the reasons delineated below, the Court **DENIES** Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 28).

### PROCEDURAL HISTORY

Plaintiff, Kencey Purdle, is an inmate in the custody of the Illinois Department of Corrections ("IDOC"), who is currently incarcerated at Centralia Correctional Center ("Centralia"). He brought this suit against Defendants for allegations stemming for their alleged conduct while Plaintiff was housed at Lawrence Correctional Center ("Lawrence"). (Doc. 13, p. 1). Plaintiff alleged that during his time at Lawrence, Defendants ignored his requests for protective custody and placed him in the COVID-19

quarantine unit as retaliation for going on a hunger strike. (Doc. 13, p. 1-2). On July 21, 2022, the Court completed its preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 13). The Court construed Plaintiff's allegations in the following counts:

> **Count 1:** First Amendment claim against Grimes, John Doe 1, Purdue, and John Doe 2 for placing Plaintiff in the COVID-19 quarantine unit in retaliation for him refusing housing in unit 2A, going on a hunger strike to object to prison officials' failure to take action on his request for protective custody, and complaining this his request for protective custody was being ignored.
>
> **Count 2:** Eighth Amendment claim against Grimes, John Doe 1, Purdue, and John Doe 2 for subjecting Plaintiff to unconstitutional conditions of confinement by placing him in the COVID-19 quarantine unit.
>
> **Count 3:** Eighth Amendment claim against Grimes, John Doe 1, Purdue, and John Doe 2 for ignoring Plaintiff's requests for protective custody.

(Doc. 13, p. 2-3). Counts 1 and 2 of Plaintiff's Complaint survived preliminary review. *Id.* at p. 4. Count 3 of Plaintiff's Complaint was dismissed without prejudice. *Id.*

## FACTUAL BACKGROUND

The only relevant grievance identified by both Plaintiff and Defendant that pertains to Plaintiff's substantive allegations is Grievance No. 04-21-137. (Doc. 29, p. 2); (Doc. 31, p. 4). Plaintiff filed the grievance at the first level on April 7, 2021. (Doc. 31, p. 10). In the grievance, Plaintiff stated the following:

> On March 3rd I went on a hunger strike d[ue] to some administrative issues which is the fear of my life/hostile environment. Going through the process I was place[d] on 53 which is the Hunger Strike Unit. While being on 5B expecting to talk to someone in command concerning my safety in Lawrence C.C. . . . I was never given the opportunity to. I came off hunger strike. I was told to pack up [be]cause the facility was placing me back over

> on 2A . [I told] C/O Grimes that I could not go back over on 2A [be]cause of fear for my life so he told me let him talk to Lt. to figure something out. C/O Grimes then came back and said that I'll be going in 8C. For their retaliation of me not wanting to go back over on 2A they sent me to 8C – The Covid Quarantine Unit. While arriving on 8C Srg. Purdue and C/O John Doe which was the officers working that morning told me that they are following the current admin. Direction in order to mitigate the spread of COVID-19. Per Dr. 504, every COVID testing I have taken before moving to 8C was negative. . . . By being on 8C which is the quarantine unit I was exposed to COVID- 19 and took a COVID test. The following week I tested positive for COVID-19.

(Doc. 31, p. 10-11). Grievance 04-21-137 was received by the counseling office at Lawrence on April 13, 2021. *Id*. at p. 10. The counselor reviewed the grievance on April 14, 2021, and concluded that "cell assignment is an administrative decision. *Id.* Grievance 04-21-137 was then received by the Lawrence Grievance Officer on April 19, 2021. *Id.* at p. 11. The Grievance Officer affirmed the decision of the counselor and denied Plaintiff's Grievance on August 4, 2021. *Id.* On August 5, 2021, the CAO at Lawrence affirmed the Counselor's and Grievance Officer's decision to deny Plaintiff's grievance. *Id.* On October 15, 2021, Grievance 04-21-137 was received by the Administrative Review Board ("ARB"). *Id.* On November 1, 2021, the ARB provided a response to Plaintiff's grievance indicating that the appeal was received thirty days past the date of the CAO's decision, and therefore the issue would not be addressed further. *Id.*

**LEGAL STANDARDS**

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which

would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See National Athletic Sportswear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id.* at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93

(2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, to reduce damages, and to shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined in the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claim. *See* 20 ILL. ADMIN. CODE § 504.800, et seq. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the prison's grievance procedures. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint,

including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(a). Should the prisoner not be satisfied with the counselor's response, the prisoner can then submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The grievance officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report their findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the grievance officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender

indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such cases, the inmate will be notified in writing that they should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850. *Id.*

## DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies for Grievance No. 04-21-137 because the ARB did not receive the grievance within thirty days of the date of decision made by the CAO at Lawrence. (Doc. 29, p. 8). *See also* 20 ILL. ADMIN. CODE §504.850(a) (noting that an inmate may appeal a grievance denial to the ARB within 30 days of the date of decision). However, Plaintiff indicates that an internal mailing error at Lawrence prevented him from receiving the CAO's response in a timely

manner which precluded him from submitting his grievance to the ARB within the thirty-day period. As Defendants have not proven that the administrative remedy process was truly available to Plaintiff, the Court must **DENY** Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 29).

An inmate is only required to exhaust those administrative remedies that are available to him and he "need not exhaust unavailable ones." *See Ross v. Blake*, 578 U.S. 632, 642 (2016). Because Defendants have invoked the affirmative defense of failure to exhaust, they must prove that "an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). *See also Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022) (defendants "cannot shift it to require [the plaintiff to show] that administrative remedies were unavailable."). An administrative remedy is considered "available" when it is "capable of use for the accomplishment of a purpose" and that which is accessible or may be obtained." *Ross*, 578 U.S. at 642 (citing *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001)).

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff states that he did not receive the response from the CAO at Lawrence until "mid to late September 2021." (Doc. 10, p. 4). This is after the thirty-day period within which Plaintiff had to forward his appeal to the ARB as the date of decision by the CAO is listed as August 5, 2021. *Id.* at p. 12. Based on that date of decision, Plaintiff was required to submit his appeal to the ARB by September 5, 2021. Plaintiff believes that he did not receive the grievance response in a timely manner because he was transferred to Centralia on August 4, 2021. (Doc. 31, p. 5). Plaintiff highlights that at the top of Grievance No. 04-21-137, there

is a crossed-out cell number. Originally, it appears as though the Grievance Response was sent to cell S4 B14. However, Plaintiff notes he was actually in cell S4 D5. *Id.*

Plaintiff's situation is similar to that in *Dole*. In *Dole*, the plaintiff attempted to file a grievance with the ARB before the deadline had passed. 438 F.3d at p. 805. He placed the grievance in the hands of prison authorities, trusting that it would be delivered to the ARB. *Id.* Dole did not hear back from the ARB, and he sent two letters of inquiry regarding the status of his grievance. *Id.* The ARB responded that it did not have any record of Plaintiff's grievance. *Id.* The Seventh Circuit concluded that because Dole had followed all procedures and "prison officials were responsible for the mishandling of the grievance" that it could not be said that plaintiff failed to exhaust his administrative remedies. *Id.* at p. 811.

Here, Plaintiff was not at fault for the alleged mishandling of his grievance at the second level. Additionally, the ARB did not indicate to Plaintiff that he had any other means of recourse. (Doc. 29, Exh. 1, p. 7). Thus, Plaintiff did everything he could to exhaust his administrative remedies. As Defendants do not attack Plaintiff's argument, and based on the documentary evidence relied upon by Plaintiff, the Court finds his factual assertions to be credible. Accordingly, the Court finds that Plaintiff did not have access to the administrative remedy process, and Defendants have failed to meet their burden to demonstrate that the grievance process was available to Plaintiff.

## Conclusion

For the forgoing reasons, the Court **DENIES** the Motion for Summary Judgment as to Exhaustion of Administrative Remedies. (Doc. 28).

**IT IS SO ORDERED.**

**DATED: September 28, 2023.**

Digitally signed by Judge Sison
Date: 2023.09.28 13:51:40 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**