## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KENCEY PURDLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:22-cv-01044-GCS** |
| | ) | |
| **MICAH GRIMES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

Plaintiff Kencey Purdle, an individual in custody in the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights related to a hunger strike and COVID-19 conditions while housed in Lawrence Correctional Center ("Lawrence") in 2021. Pending before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants Micah Grimes, Bryan Perdue,[1] Matthew McCarthy, and Seth Slunaker. (Doc. 63). Plaintiff opposes the motion. (Doc. 66). For the reasons set forth below, the Court **GRANTS** the Motion in part and **DENIES** the Motion in part.

### BACKGROUND

Plaintiff filed this lawsuit for monetary damages on May 18, 2022. (Doc. 1).[2]

---

[1]     The Clerk of Court is directed to amend the docket to reflect the correct spelling of Defendant Perdue's name.

[2]     On April 14, 2024, upon a motion from Plaintiff, the Court substituted Matthew McCarthy for John Doe 1 and Seth Slunaker for John Doe 2. (Doc. 41).

Plaintiff alleges that in late February 2021, he requested protective custody from Internal Affairs staff at Lawrence due to threats of physical harm from other inmates. (Doc. 1, p. 6). When Internal Affairs failed to respond to his request, Plaintiff declared a hunger strike on March 3, 2021, and was moved from 2A to the hunger strike unit in 5B. *Id.* After three or four days, Plaintiff was informed by Defendant Officer Grimes he would be returned to his original housing unit in 2A. *Id.* Plaintiff refused to return to 2A, reiterating his request for protective custody. *Id.*

Rather than placing Plaintiff in protective custody, he was moved to 8C, which was designated as the COVID-19 quarantine unit. (Doc. 1, p. 6). At 8C, Plaintiff was forced to cell with an inmate who displayed COVID-19 symptoms and who had informed staff that he was sick with the virus. *Id.* When Plaintiff objected to this placement, Defendant Sergeant Perdue told him he could either enter the cell or be placed in disciplinary segregation. *Id.* at p. 6-7. Plaintiff was ultimately forced into the cell with the symptomatic inmate. *Id.* at p. 7.

Defendant Lieutenant McCarthy, as the cluster lieutenant in charge of 5B, had the authority to make housing decisions and was responsible for ordering Plaintiff's placement in 8C. (Doc. 1, p. 8). Defendants Perdue and Slunaker were present when Plaintiff was forced into the cell despite his cellmate's obvious illness. *Id.* A few days after being placed in 8C, Plaintiff declared another hunger strike to escape the dangerous conditions. *Id.* at p. 7.

---

Plaintiff tested positive for COVID-19 on March 12, 2021. He experienced symptoms including headache and loss of appetite, recovering after approximately one week. (Doc. 1, p. 7). After Plaintiff recovered from COVID-19, he was moved to 1B and was eventually transferred to Centralia Correctional Center on August 4, 2021. *Id.*

On July 21, 2022, the Court conducted a preliminary review of the Complaint pursuant to 28 U.S.C. § 1952A. (Doc. 13). Based on the above allegations, the Court allowed Plaintiff to proceed on the following claims:

**Count 1:** **First Amendment claim against Grimes, McCarthy, Perdue, and Slunaker for placing Plaintiff in the COVID-19 quarantine unit in retaliation for him refusing housing in unit 2A, going on a hunger strike to object to prison officials' failure to take action on his request for protective custody, and complaining this his request for protective custody was being ignored.**

**Count 2:** **Eighth Amendment claim against Grimes, McCarthy, Perdue, and Slunaker for subjecting Plaintiff to unconstitutional conditions of confinement by placing him in the COVID-19 quarantine unit.**

(Doc. 13, p. 2-3).

On September 28, 2023, the Court denied Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 49). The case proceeded to merits discovery. On December 5, 2024, Defendants filed a Motion for Summary Judgment. (Doc. 63). Plaintiff filed a Response in Opposition. (Doc. 66). Accordingly, the issue of summary judgment is now ripe for the Court's review.

FACTUAL BACKGROUND

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Plaintiff arrived at Lawrence on April 26, 2019. *See* (Doc. 63-1, p. 10; Doc. 63-2). By March 2021, he was living in the 2-House, A-Wing of Lawrence, also known as "2A." (Doc. 63-1, p. 16-17; Doc. 63-2).

On March 3, 2021, Plaintiff approached correctional staff in Internal Affairs and requested placement in protective custody. (Doc. 63-1, p. 11, 13-14). The next day, in fear of his life without protective custody, Plaintiff initiated a hunger strike. (Doc. 63-1, p. 15-16; Doc. 63-2; Doc. 63-3, p. 1). Plaintiff was thus moved to the hunger strike unit in 5-House, B-Wing ("5B"). (Doc. 63-1, p. 17; Doc. 63-2). Prior to this placement, Internal Affairs personnel visited Plaintiff in 2A to discuss his protective custody request. (Doc. 63-1, p. 29-30).

In the hunger strike unit, Plaintiff received identical food service and maintained the same access to toilet and shower facilities as in 2A, but he was housed in a single cell rather than a double occupancy cell. (Doc. 63-1, p. 17-18). On March 4, 2021, Plaintiff ended his hunger strike. *Id.* at p. 18-19; (Doc. 63-3, p. 1). Following the termination of his hunger strike on March 4, 2021, Plaintiff was scheduled for return to his original cell in 2A. (Doc. 63-1, p. 19-20). Plaintiff told Defendant Grimes he could not return to his original cell. (Doc. 63-1, p. 19). Defendant Grimes said he would talk with his superiors. *Id.* On March 5, 2021, instead of being moved back to 2A, Plaintiff was moved from 5B to the C-Wing of the 8-House ("8C"). (Doc. 63-1, p. 19-20; 33-34; Doc. 63-2). Plaintiff believes Matthew McCarthy, serving as lieutenant, possessed decision-making authority regarding Plaintiff's housing placement due to his supervisory position. (Doc. 63-1, p. 30-33). Plaintiff does not recall if he had personal communication with McCarthy. *Id.* at p.

31-32.

When Plaintiff arrived at the 8-House, Defendant Perdue was stationed there. (Doc. 63-1, p. 35.). He asked Defendant Perdue if it was a Covid-19 quarantine unit. *Id.* Defendant Perdue told him that it was. *Id.* at p. 36. Plaintiff explained to Defendant Perdue he did not have Covid-19, and he should not be going into the quarantine unit. *Id.* Perdue informed Plaintiff that due to Covid-19 restrictions, Plaintiff could either be housed in the quarantine unit or go to segregated housing. *Id.* Plaintiff entered the quarantine unit accompanied by Defendant Slunaker, who was the active officer at that time. *Id.* at p. 38-39.

Inside the unit, Plaintiff observed that his cellmate exhibited COVID symptoms. (Doc. 63-1, p. 39). The cellmate told Plaintiff and Defendant Slunaker he was sick, and Plaintiff couldn't be in the unit with him. *Id.* at p. 21, 39. Plaintiff subsequently declared a second hunger strike, resulting in his return to the hunger strike unit. (Doc. 63-1, p. 23-24, 38; Doc. 63-2; Doc. 63-3, p. 3-6). On March 12, 2021, Plaintiff tested positive for COVID while housed in 5B and was transferred to the B-Wing of 6-House. (Doc. 63-1, p. 25; Doc. 63-2). Plaintiff experienced COVID-related symptoms including headache and loss of appetite, with him recovering from these symptoms in approximately one week. (Doc. 63-1, p. 26). Following his recovery, Plaintiff was moved from 6B to a new cell and, ultimately, he was transferred out of Lawrence. (Doc. 63-1, p. 26-27; Doc. 63-2).

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025) (citing *Anderson*, 477 U.S. at 255). *See also Bishop v. Air Line Pilots Association Int'l,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding [,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Smith v. City of Janesville,* 40 F.4th

816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn L. Firm, S.C.,* 934 F.3d 572, 579 (7th Cir. 2019) (internal citation omitted).

## DISCUSSION

### A.    Personal Involvement

Defendant McCarthy argues he cannot be liable for any alleged violations of Plaintiff's rights because he was not personally involved in any of the conduct that gave rise to the alleged violations and because Section 1983 does not create a system of vicarious liability. (Doc. 63, p. 6).

A government official is responsible under Section 1983 for conduct in which they are personally involved. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). "Personal involvement in a subordinate's constitutional violation requires supervisors to know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Taylor v. Ways*, 999 F.3d 478, 494 (7th Cir. 2021) (internal quotation omitted).

Defendant McCarthy argues he is named as a defendant in this case "only because of his supervisory role" and points to the fact Plaintiff did not speak with Defendant McCarthy directly to support his conclusion. (Doc. 63, p. 6). He further alleges "no evidence can show that [Defendant] McCarthy was involved in the placement of Purdle." *Id.* The Court disagrees. As noted above, Section 1983 does not require personal interaction between an inmate and a prison official for liability to attach to the official. What Section 1983 requires is personal involvement. Plaintiff alleges Defendant McCarthy was the lieutenant in charge when Plaintiff ended his first hunger strike and told Defendant Grimes that he would not return to House 2A. (Doc. 63-1, p. 19, 30-31). Plaintiff alleges Defendant McCarthy made, or at least approved of, the decision to transfer Plaintiff to a Covid-19 quarantine unit because lower-ranking guards cannot move prisoners without authorization and because Defendant McCarthy was in charge at the time of this request. (Doc. 63-1, p. 31). Plaintiff also recalled that the guards, including Defendant McCarthy, met before moving Plaintiff to the Covid quarantine unit. (Doc. 63-1, p. 31-32). When the facts are viewed in the light most favorable to Plaintiff, as they must be at the summary judgment stage, a reasonable jury could conclude that Defendant McCarthy was personally involved in the alleged violations of Plaintiff's constitutional rights.

**B.      Qualified Immunity**

Defendants assert they are entitled to qualified immunity from Plaintiff's claims. (Doc. 63, p. 14-15). "Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). The test for whether qualified immunity applies has two prongs: (1) whether the facts, taken in the light most favorable to the party asserting the injury, demonstrate that the official's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Defendants argue that neither Count I nor Count II involves a clearly established constitutional condition of confinement. (Doc. 63, p. 15). Notably, they do not make any argument as to the first prong of the qualified immunity test. (Doc. 63, p. 15-16). For the reasons that follow, the Court finds that qualified immunity applies to Plaintiff's claim that Defendants retaliated against him for engaging in a hunger strike, but not to the other retaliatory grounds alleged under Count 1, and that qualified immunity does not apply to Count 2.

### i. Count 1

Defendants assert they are entitled to qualified immunity on Count 1 because going on a hunger strike is not a clearly established protected activity under the First Amendment. (Doc. 63, p. 15). The preliminary review in this case listed three grounds of retaliation: i) Plaintiff going on a hunger strike over officials' failure to act on Plaintiff's request for protective custody; ii) Plaintiff refusing housing in Unit 2A; and iii) Plaintiff complaining that his request for protective custody was being ignored. (Doc. 13, p. 3). In their Motion for Summary Judgment, Defendants argue that the first of these grounds is not protected under the First Amendment. (Doc. 63, p. 15). They make no such claim with

respect to Plaintiff refusing housing or complaining about the handling of his request for protective custody. Accordingly, the Court finds that Defendants have waived any claim to qualified immunity with respect to these allegedly retaliatory grounds.

On the other hand, Plaintiff concedes that there is not a constitutionally protected right to engage in a hunger strike. (Doc. 66, p. 1). Thus, the Court finds that qualified immunity shields Defendants from the claim that they retaliated against Plaintiff for going on a hunger strike.

### ii.     Count 2

Defendants assert they are entitled to qualified immunity because there is no case law that clearly establishes that contracting Covid-19 is an unconstitutional condition of confinement. (Doc. 63, p. 15). However, that is not what Plaintiff alleges. Rather, Count II alleges that Defendants subjected Plaintiff to unconstitutional conditions of confinement "by placing him in the COVID-19 quarantine unit." (Doc. 13, p. 2). The alleged constitutional violation was not that Plaintiff contracted COVID-19, it was that he was exposed to an infectious disease, which is a clearly established condition of confinement which requires a remedy under the Eighth Amendment.

The Eighth Amendment protects against deliberate indifference to prisoners' "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In *Helling*, the Supreme Court had "great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." 509 U.S. at 33. It went on to note

Page 10 of 20

that exposing inmates to infectious diseases was "one of the prison conditions for which the Eighth Amendment required a remedy." *Id.* This is precisely the condition of detention to which Defendants exposed Plaintiff.

Defendants cite several cases in support of their position that their conduct did not violate a clearly established constitutional right. All of them can be distinguished from this case. In *McGee v. Pontow*, for instance, the Seventh Circuit affirmed a dismissal of a case where the plaintiff was required to work on a prison wing where there were Covid-positive prisoners "twice a day, for only five to seven minutes at a time, while masked, gloved, and able to clean himself." No. 23-1487, 2023 WL 7381450, *2 (7th Cir. Nov. 8, 2023). That is an entirely different situation from the position in which Defendants placed Plaintiff.

The other cases to which Defendants cite are also not helpful. One case did not address qualified immunity. *See, e.g.*, *Shipp v. Lobenstein* . No. 21-cv-167-JDP, 2024 WL 4264354,  at *11 n.2 (W.D. Wis. Sept. 23, 2024) (stating that "[b]ecause I am dismissing Shipp's claims on the merits, I need not consider defendants' qualified immunity arguments."). Defendants also cited *Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884 (E.D. Wisc. Nov. 18, 2020), which concerned a plaintiff who contracted Covid-19 after moving from one prison unit to another. However, "[t]here [was] no allegation that Coates' cellmate was infected, nor that Captain Arndt knew that any of the inmates on Unit 17 had COVID-19." *Id.* at *1. The case of *Earl v. McDermott*, No. 23-CV-1017-PP, 2024 WL 1012920 (E.D. Wisc. Mar. 8, 2024), is also similar. In *Earl*, the plaintiff "[did] not allege that he had contact with any Unit 11 or Unit 9 incarcerated persons who tested positive

for COVID-19 or who were roomed in cells with people who did. Nor does he allege that

he ever contacted any defendant about symptoms he was experiencing or concerns that

he had." *Id.* at *6. Plaintiff has alleged his cellmate was infected and Defendants knew

that the cellmate was infected – it is self-evident the cellmate was housed on the

quarantine *because* he was infected.

Finally, Defendants rely on *Housley v. Plasse* to show that qualified immunity

should apply where prison officials attempt to follow Covid policies. That case is also not

helpful. In *Housley*, the court found that "[i]t is clearly established that prison officials

may not 'be deliberately indifferent to the exposure of inmates to a serious,

communicable disease' under the Eighth Amendment." 688 F. Supp. 3d 830, 836-837

(2023) (citing *Helling*, 509 U.S. at 33). It went on to explain that "[a]lthough COVID-19

was a new virus, the duty to protect inmates from needless exposure to a serious illness

'need not be litigated and then established disease by disease[.]'" *Id.* (citing *Estate of Clark

v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017)).

While the District Court found that qualified immunity applied to the *Housley*

defendants because they were not on notice that their particular conduct -- failing to

provide masks, cleaning supplies, testing, or adequate treatment of COVID-19 symptoms

-- violated the plaintiff's constitutional rights, 688 F. Supp. 3d at 837, that is not so in the

case before this Court. Defendants must have known that putting Plaintiff, who had not

tested positive for COVID-19, in a quarantine cell with an inmate who had tested positive

for COVID-19 would expose Plaintiff to a serious communicable disease. Nor have

Defendants provided evidence to show that it was official policy to house quarantined

and healthy inmates in the same cell. The Supreme Court and the Seventh Circuit have recognized a prisoner's right not to be exposed to serious communicable diseases for decades. *See Helling*, 509 U.S. at 33; *Powers v. Snyder*, 484 F.3d 929, 931 (7th Cir. 2007) (collecting cases). Defendants cannot claim qualified immunity for exposing Plaintiff to COVID-19.

### C.   Merits of the Claims

#### i.   *Count 1*

Plaintiff must show three things to prevail on a First Amendment retaliation claim: (1) that he engaged in activity protected by the First Amendment; (2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) that the First Amendment activity was at least a motivating factor in the Defendants' decision to take retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 549 (7th Cir. 2009) (internal quotation omitted). As noted above, Defendants are entitled to qualified immunity with respect to Plaintiff's claim of retaliation for engaging in a hunger strike. Accordingly, the Court finds as moot Defendants' argument that engaging in a hunger strike is not protected speech. Defendants make no argument that the other grounds for retaliation were not protected speech. The Court finds that Defendants have waived any such arguments.

#### 1.   Severity of Deprivation

The first issue before the Court is the severity of the alleged deprivation that Plaintiff suffered. As with the arguments on protected speech, Defendants focus exclusively on whether placing Plaintiff in a quarantine cell with an infected inmate

deterred Plaintiff from engaging in a hunger strike. (Doc. 63, p. 9). This argument is moot.

However, because analysis of the severity of a deprivation applies equally to the other

grounds for retaliation in this case, the Court will address the issue.

A deprivation is severe enough to amount to retaliation under the First

Amendment where it "would likely deter a person of ordinary firmness from continuing

to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020)

(quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). A deprivation need not result

in harm, nor must it be extreme, to deter protected activity. *See, e.g.*, *Douglas*, 964 F.3d at

649 (noting that threat may be sufficient to deter protected activity); *Massey v. Johnson*,

457 F.3d 711, 720 (7th Cir. 2006) (stating that "to give rise to liability, the retaliatory

harassment need not be extreme.").

Defendants claim that because Plaintiff's Covid symptoms were "minimal," they

would not deter a person of ordinary firmness from continuing to engage in protected

activity. (Doc. 63, p. 9). They are incorrect on at least two grounds. First, the question is

not what harm Plaintiff suffered, it is whether the alleged deprivation – moving Plaintiff

into a quarantine cell with a person who was infected with Covid-19 – would deter

protected activity. A realistic threat can chill First Amendment rights. *See Hodgkins ex rel.*

*Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004). Here, a reasonable jury could find

that deliberately exposing an inmate to Covid-19, and thus to the potential harms that

Covid-19 could cause, would deter a person of ordinary firmness from continuing to

engage in protected activity.[3]

Second, Plaintiff explained during his deposition that he suffered from memory problems in the year after he contracted Covid-19. (Doc. 63-1, p. 39). Covid-19 has been linked to cognitive problems even after other symptoms have resolved.[4] Thus, even if the severity of the symptoms that Plaintiff suffered were the central issue in the severity of the alleged deprivation, there would be a genuine dispute of material fact that would preclude summary judgment on the matter.

### 2. Motivating Factor

The second question before the Court is whether Plaintiff's protected activity was at least a motivating factor in the alleged retaliation against him. A plaintiff need only show that retaliation was *a* motivating factor, not *the* motivating factor, for the underlying conduct. *See Byrd v. Smith*, No. 24-2663, 2025 WL 3645147, *3 (7th Cir. Dec. 16, 2025) (citing *Massey v. Johnson*, 457 F.3d 711, 719-720 (7th Cir. 2006)). Where a plaintiff asserts a retaliatory motive and a defendant merely asserts a non-retaliatory motive, summary judgment is not appropriate. *See, e.g., Higgason v. Farley*, 83 F.3d 807, 810-811 (7th Cir. 1996) (noting that summary judgment was inappropriate where record was "swearing contest" as to alleged retaliatory motive).

---

[3]     The fact that Plaintiff was not deterred from engaging in protected activity is not relevant. *See, e.g., Reeves*, 964 F.3d at 646-647 (noting that plaintiff continuing to engage in protected activity was an "irrelevant circumstance" to First Amendment retaliation analysis).

[4]     *See, e.g.,* Hampshire et al., *Cognition and Memory after Covid-19 in a Large Community Sample*, 390 NEW ENG. J. MED. 806 (2024).

Defendants claim that none of them knew that Plaintiff had requested protective custody, and so the request could not have motivated their conduct. (Doc. 63, p. 10-11). The Court agrees that Plaintiff has not demonstrated that Defendants Perdue or Slunaker knew about his requests for custody. They are entitled to summary judgment on Count 1. However, the record shows a genuine dispute of material fact as to whether Defendants Grimes and McCarthy knew about Plaintiff's request. At his deposition, Plaintiff explained that he told Defendant Grimes he could not return to his cell in Unit C, and he had requested protective custody. (Doc. 63-1, p. 19). Defendant Grimes left and spoke to his superiors. When he returned, he said that "they" had decided that he would be moved to the Covid-19 quarantine unit. *Id.* at p. 19-20. Defendants do not dispute that Plaintiff spoke with Defendant Grimes about his refusal to return to his cell in Unit C. (Doc. 63, p. 3). A reasonable jury could conclude, based on the record, that Defendant Grimes knew of Plaintiff's request for protective custody and that, as Plaintiff alleges, he told Defendant McCarthy about the request before Plaintiff was moved to the quarantine unit. This genuine dispute of material fact precludes summary judgment for Defendants Grimes and McCarthy on Count 1.

### ii.    Count 2

The Eighth Amendment "imposes duties on prison officials to 'provide humane conditions of confinement.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To prevail on an Eight Amendment conditions of confinement claim, a plaintiff must make two showings: "first, an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the

minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety—and second, a subjective showing of a defendant's culpable state of mind." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citations and quotation omitted). Defendants have not shown that no reasonable jury could find that the first prong of the test is satisfied.

A reasonable jury could conclude Plaintiff suffered from an objectively serious condition. Defendants argue the Covid-19 pandemic was not an "objectively serious" condition because Plaintiff suffered only mild Covid-19 symptoms. (Doc. 63, p. 12-13). First, and as noted above, the deprivation at issue in this case is exposing Plaintiff to Covid-19.

Covid-19 hospitalized and killed millions of people in the United States and around the world. It was also the third-leading cause of death in the United States in 2020 and 2021.[5] It is simply not plausible that exposing an inmate to a dangerous and infectious disease cannot satisfy the deliberate indifference standard as a matter of law. *See, e.g.*, *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (noting that objective prong of deliberate indifference analysis "easily satisfied" with respect to risk posed by Covid-19 in prison environment); *Housley*, 688 F. Supp. 3d. at 836. A reasonable jury could conclude that the risk of exposure to Covid-19 satisfies the first prong of deliberate indifference.

---

[5]    National Institutes of Health, "COVID-19 was third leading cause of death in the United States in both 2020 and 2021," July 5, 2022, https://www.nih.gov/news-events/news-releases/covid-19-was-third-leading-cause-death-united-states-both-2020-2021.

Defendants next make a series of arguments that they lacked actual knowledge of various facts related to Plaintiff's detention in the quarantine unit, which precludes any finding that they acted with deliberate indifference. The Court will address each Defendant in turn.

The Court turns first to Defendant Grimes. Plaintiff's allegation against Defendant Grimes is that he told the other Defendants about Plaintiff's request not to be returned to 2-House after the end of his first hunger strike. (Doc. 63-1, p. 31). Plaintiff does not allege that Defendant Grimes knew that Plaintiff would be moved to the Covid-19 quarantine unit or that he was a part of the decision to send Plaintiff there. Further, Plaintiff notes that Defendant Grimes was a correctional officer, not a sergeant or lieutenant, and thus, he could not make the decision to send Plaintiff to any specific housing unit. Plaintiff has not shown that Defendant Grimes knew about the risk that Plaintiff would be exposed to Covid-19 or that he acted with deliberate indifference to that risk. The Court finds that Defendant Grimes  is entitled to summary judgment on Count 2.

The Court turns next to Defendant Perdue. Defendant Perdue claims that, because he did not have actual knowledge that Plaintiff's eventual cellmate in the Covid-19 quarantine unit had Covid-19, and because he lacked the authority to reassign Plaintiff to a different cell, he could not have acted with deliberate indifference. Defendant Perdue was at the entrance to the quarantine unit when Plaintiff arrived there and confirmed to Plaintiff that the unit was for inmates who had Covid-19. (Doc. 63, p. 13; Doc. 63-1, p. 35-36). It seems evident that a reasonable jury could infer that a guard working on a Covid-19 quarantine unit knew, or should have known, that the inmates housed there had

Covid-19. As for knowledge, Defendant Perdue appears to assert that his only options, when faced with an inmate who was going into quarantine when he was not infected, were to expose that inmate to an infectious disease or reassign him to a different housing unit. (Doc. 63, p. 13). A reasonable jury could conclude that Defendant Perdue could have taken other steps, such as contacting a supervisor or confirming whether Plaintiff had Covid-19. A reasonable jury could further conclude that failing to take those steps, and instead threatening to send Plaintiff to segregated housing, (Doc. 63-1, p. 36). constitutes deliberate indifference. Accordingly, Defendant Perdue is not entitled to summary judgment on Count 2.

Defendant Slunaker is not entitled to summary judgment on Count 2, either. Defendant Slunaker took Plaintiff into the quarantine unit and put him in a cell with a Covid-positive inmate. (Doc. 63, p. 13; Doc. 63-1, p. 38). Defendant Slunaker argues that because Plaintiff did not exhibit symptoms of Covid-19 when he was put into a cell in the quarantine unit, Defendant Slunaker cannot have acted with deliberate indifference. The Court disagrees. Defendant Slunaker was present when Plaintiff protested going into a quarantine cell. The inmate in that cell, who had Covid-19, told Defendant Slunaker not to put Plaintiff into the cell with him because he was sick and Plaintiff would get sick. (Doc. 63-1, p. 38). A reasonable jury could conclude from those facts that Defendant Slunaker acted with deliberate indifference. Accordingly, Defendant Slunaker is not entitled to summary judgment on Count 2.

Finally, Defendant McCarthy is not entitled to summary judgment on Count 2. As discussed above in the section on personal involvement, Plaintiff has pointed to facts that,

viewed in the light most favorable to him, could support a finding that Defendant McCarthy either ordered Plaintiff's transfer to a quarantine cell or knew of and condoned the transfer. Defendant McCarthy has not disputed that he was the lieutenant in command when the transfer occurred, nor has he indicated that the decision might have been taken by somebody else. Accordingly, the Court finds that Defendant McCarthy is not entitled to summary judgment on Count 2.

### CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The Court grants summary judgment to all Defendants on Count 1 as it pertains to alleged retaliation for Plaintiff engaging in a hunger strike and to Defendants Perdue and Slunaker as to retaliation for Plaintiff's request for protective custody. Count 1 will continue as to the other Defendants on retaliation for requesting protective custody. The Court grants summary judgment to Defendant Grimes on Count 2. Count 2 will continue against the other Defendants.

**IT IS SO ORDERED.**

**DATED:  March 30, 2026.**

Gilbert C Sison

Digitally signed by Gilbert C Sison
Date: 2026.03.30 17:07:51 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**